[Cite as *Marok v. Ohio State Univ.*, 2014-Ohio-1184.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Theodore K. Marok, III,            :

      Plaintiff-Appellant,            :            No. 13AP-12
(Ct. of Cl. No. 2006-06736)

v.            :

                                        (REGULAR CALENDAR)

The Ohio State University,            :

      Defendant-Appellee.            :

---

## D E C I S I O N

Rendered on March 25, 2014

---

*Theodore K. Marok, III*, pro se.

*Michael DeWine*, Attorney General, and *Stacy Hannan*, for appellee.

---

APPEAL from the Court of Claims of Ohio.

BROWN, J.

{¶ 1} This is an appeal by plaintiff-appellant, Theodore K. Marok, III, from a judgment of the Court of Claims of Ohio, overruling his objections to a magistrate's decision and rendering judgment in favor of defendant-appellee, The Ohio State University ("OSU").

{¶ 2} On October 23, 2006, appellant filed a complaint against OSU, seeking monetary damages and injunctive relief. According to the complaint, appellant was a student at OSU pursuing a Bachelors degree in Agriculture Construction and Engineering until OSU dismissed him from the school on December 24, 1999. The complaint alleged in part that OSU had breached certain contractual duties, including the duty to keep accurate student records and provide him a full billing history.

{¶ 3} On July 12, 2007, OSU filed a motion for judgment on the pleadings pursuant to Civ.R. 12(B)(6) and 12(C). By decision filed October 8, 2007, the trial court granted OSU's motion for judgment on the pleadings, finding that appellant's "claims for breach of contract, negligence, and unjust enrichment arose when plaintiff was dismissed from the university in December 1999 or at the latest, when he was notified of attempts to collect the debt in early 2000." The court thus determined that appellant's claims were untimely and that OSU was entitled to judgment as a matter of law.

{¶ 4} Appellant filed an appeal with this court from the trial court's judgment, raising nine assignments of error. In *Marok v. Ohio State Univ.,* 10th Dist. No. 07AP-921, 2008-Ohio-3170, ¶ 12, this court sustained appellant's first assignment of error, holding in part that the trial court erred in relying upon the affirmative defense of statute of limitations to dismiss appellant's complaint where OSU failed to raise that affirmative defense "by motion before pleading, did not raise it in its answer, and did not move to amend its answer to add the affirmative defense." This court also sustained appellant's second assignment of error, holding that "the defense of res judicata may not be raised by motion to dismiss under Civ.R. 12(B)." *Id.* at ¶ 13. Based upon the resolution of the first and second assignments of error, this court found appellant's remaining assignments of error to be moot.

{¶ 5} Following remand, OSU filed a motion for leave to amend its complaint, pursuant to Civ.R. 15(A), seeking to include the affirmative defenses of statute of limitations and res judicata. The trial court granted OSU's motion for leave to amend its answer by entry filed October 1, 2009.

{¶ 6} The case was bifurcated and, on November 2, 2009, the parties tried the liability issue before a magistrate of the court. On May 3, 2011, the magistrate issued a decision finding that appellant's claims were time-barred under the statute of limitations and also barred under the doctrine of res judicata. On May 17, 2011, appellant filed objections to the magistrate's decision. By judgment entry filed July 25, 2011, the trial court overruled the objections and rendered judgment in favor of OSU.

{¶ 7} Appellant filed an appeal from the trial court's decision, raising 16 assignments of error. In *Marok v. Ohio State Univ.,* 10th Dist. No. 11AP-744, 2012-Ohio-2593, ¶ 14, this court sustained appellant's fourteenth and sixteenth assignments of error,

finding that the trial court erred in failing to consider appellant's request to use alternative technology in place of a transcript and that such error was not harmless in light of the "central role the magistrate's factual findings served in the Court of Claims' decision to overrule plaintiff's objections." This court deemed appellant's remaining assignments of error moot in light of the disposition of the fourteenth and sixteenth assignments of error.

{¶ 8} Following remand, the trial court conducted a review of the transcript of proceedings, as well as DVD recordings and other evidence admitted at trial. By judgment entry filed July 25, 2011, the trial court overruled appellant's objections to the magistrate's decision and rendered judgment in favor of OSU.

{¶ 9} On appeal, appellant, pro se, sets forth the following 17 assignments of error for this court's review:

> [I.] Court failed to make a finding on this, the sole point of contention between the parties.
>
> [II.] Trial court committed error when it misinterpreted Plaintiff[']s Complaint.
>
> [III.] Trial court committed error when it allowed obvious false statements from Doug Folkert and Deborah Terry and violations of federal and state law in its courtroom.
>
> [IV.] The trial court committed error when it acknowledged harassment by the defendant but not its federal violation of law.
>
> [V.] Court committed error ignoring remedial protections under federal Law.
>
> [VI.] Court committed error when it failed to recognize spoliations of Plaintiff[']s incomplete student records.
>
> [VII.]
>
> [VIII.] Trial Court committed error when it failed to apply "continuing violation" doctrine.
>
> [IX.] Trial Court committed error Allowing the continuous violations of federal and state law.
>
> [X.] Trial court committed error when it found res judicata bar existes.

[XI.]

[XII.] Trial court abused its discretion when it found Judgment in favor of the Defendant when judgment neither comporting with the record, nor reason.

[XIII.] Trial Court committed error when it found a prior valid judgment on merits existed.

[XIV.] Trial court committed error when it allowed Defendant to disobey a court orders.

[XV.] Misapplication of Personal information law.

[XVI.] Trial court committed error holding Defendant[']s obligations ended in 2000.

[XVII.] Trial court committed error when it overruled Plaintifss objections.

(Sic passim.)

{¶ 10} Many of appellant's 17 assignments of error raise common and interrelated issues, and we will therefore address them in several groupings for purposes of review. In several of his assignments of error, appellant challenges the trial court's determination that the applicable statute of limitations and the doctrine of res judicata barred his claims for relief. Appellant further contends the trial court erred in: (1) failing to find applicable either the continuing violation doctrine or the discovery rule, (2) misconstruing his complaint, (3) allowing OSU to present false testimony, (4) failing to make findings and recognize the withholding and/or spoliation of his personal student records, (5) denying injunctive and monetary relief on his claims, (6) failing to recognize that OSU harassed him in violation of the Fair Debt Collection Practices Act, (7) failing to find negligence on the part of OSU, and (8) overruling his objections.

{¶ 11} In general, if a party files objections to a magistrate's decision, "a trial court undertakes a de novo review" of that decision. *Meccon, Inc. v. Univ. of Akron,* 10th Dist. No. 12AP-899, 2013-Ohio-2563, ¶ 15, citing *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15. An appellate court reviews a trial court's adoption of a magistrate's decision for abuse of discretion. *Id.* at ¶ 15. As to questions of

law, however, an appellate court's review is de novo.  *Masterclean, Inc. v. Ohio Dept. of Adm. Servs.,* 10th Dist. No. 98AP-727 (May 13, 1999).

{¶ 12} With respect to a manifest weight challenge, a "judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence."  *Meccon* at ¶ 15, citing *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 31, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. In applying this standard of review, "an appellate court must presume the findings of the trier of fact are correct because it is best able to observe the witnesses and use those observations in weighing the credibility of the testimony." *Id.*

{¶ 13} In its decision, the magistrate made the following factual findings based upon the evidence presented at trial.  In 1999, appellant was a student at OSU pursuing an undergraduate degree in the College of Agriculture.  According to appellant, problems related to the scheduling of a required course (Agriculture and Construction Systems Management 605), as well as other acts or omissions by OSU, prevented him from completing his degree curriculum.

{¶ 14} On December 24, 1999, Jill Pfister, OSU's assistant dean of Academic Affairs, wrote a letter to appellant stating that OSU was dismissing him for "failing to maintain 'the minimum requirement' for scholastic achievement."  In early 2000, appellant received statements from OSU requesting payment of the balance owed on his student account.  In May 2000, appellant received a demand letter from OSU's Office of Student Loan Services for payment on a federal Perkins loan.  Appellant testified that he continued to receive demands for payment from OSU and that he "disputed with several employees" of OSU regarding the amount of the payment owed according to the correspondence.

{¶ 15} In October 2004, appellant received notice that OSU had referred his student accounts to the Office of the Attorney General ("OAG") for collection.  In response to the OAG's demands for payment, appellant continued to dispute his debt, alleging in part that OSU "had made 'mistakes' in record-keeping."  Appellant also asserted that OSU failed to respond to his requests regarding re-admittance to the College of Agriculture. OSU subsequently brought an action against appellant in the Franklin County Municipal

Court to recover monies owed on student loan accounts. On April 11, 2006, the municipal court rendered a decision finding appellant liable to OSU for student loans. Appellant testified that he did not appeal the municipal court's decision.

{¶ 16} The magistrate, in considering appellant's claims for negligence, breach of contract and unjust enrichment, determined that appellant's "cause of action accrued at the latest on February 29, 2000, the date on which [he] was notified that his 'delinquent account' had been referred to OSU's Accounts Receivable Office for collection." Thus, the magistrate concluded, appellant "would have had to file an action against [OSU] no later than February 29, 2002." The magistrate rejected appellant's contention that the "discovery rule" was applicable to his claims and further determined that the doctrine of res judicata also barred the claims.

{¶ 17} In considering appellant's objections, the trial court noted that appellant's claims "arise either out of his student contract or the statutory provisions governing personal information systems." The trial court agreed with the magistrate's determination that "the conduct complained of by [appellant] occurred more than two years prior to the date when [appellant] filed his complaint in this court." Finding that the magistrate correctly determined the date when appellant's claims accrued, the court held that the two-year statute of limitations under R.C. 2743.16 barred each of his claims for relief. The court also found insufficient evidence to support a determination that OSU intentionally denied appellant his right to inspect, dispute or make copies of any information regarding his student records. Finally, the court held that the facts of the case supported the magistrate's application of the doctrine of res judicata as a bar to appellant's claims, but that, "even if [appellant's] claims were not barred by res judicata, such claims were subsequently barred by the applicable statute of limitations."

{¶ 18} We initially consider issues raised by appellant under his second, seventh, eighth, and ninth assignments of error. Under these assignments of error, appellant challenges the trial court's determination that the applicable statute of limitations bars his claims, and he also contends the court erred in failing to apply the discovery rule, as well as the continuing violation doctrine.

{¶ 19} Pursuant to R.C. 2743.16(A), civil actions against the state "shall be commenced no later than two years after the date of accrual of the cause of action or

within any shorter period that is applicable to similar suits between private parties."  A claim for breach of contract is subject to the R.C. 2743.16(A) two-year statute of limitations.  *Bell v. Ohio State Bd. of Trustees,* 10th Dist. No. 06AP-1174, 2007-Ohio-2790, ¶ 19.

{¶ 20} In his complaint, appellant alleged in part that OSU "did not provide services [for which it] contracted," including the failure to keep accurate records concerning his class scheduling, and the failure to release a full billing record.  The complaint also alleged the violation of several promissory note provisions and that OSU generated false account receivable reports.  According to the complaint, appellant "was first notified of the 9/30/99 alleged Account Receivable debt five months after it was created on 2/29/00 in Statement of Account and Approved Schedule."

{¶ 21} At trial, appellant, pro se, argued before the magistrate that OSU had "failed to turn over certain records" and that this "ongoing, continuous behavior * * * started roughly in 1999 with the failure to present my student records in a timely, orderly fashion in order to complete my degree at school."  (Tr. 10-11.)  Appellant further contended that, at the time of his dismissal from OSU "on Christmas Eve" 1999, he was not provided a "full billing record," nor was he "given transcripts," despite "years of requesting information, requesting the same documents over and over."  (Tr. 11.)

{¶ 22} Appellant testified on his own behalf at trial and stated he was unable to access his account while attending classes at OSU in 1999.  Appellant testified that he could not register for a class at that time, and that "we were to find out * * * several months later, that there was a hold placed on my accounts."  (Tr. 29.)  According to appellant, "[t]here was never any explanation given for what the hold was until later * * * in * * * 2000 when we started receiving billing invoices from accounts receivable and from the Perkins notes and when we started receiving suspicious billing or requests for months."  (Tr. 29.)

{¶ 23} "Later in 2000," appellant received "statements of accounts" from OSU, and "we could not account for" billing inconsistencies.  (Tr. 30.)  As a result, appellant "began * * * requesting the billing history."  (Tr. 30.)  Appellant stated that notations by OSU "show that I disputed the debt at that time in 2000."  (Tr. 30.)  Appellant applied to Bowling Green State University ("BGSU") "at that time," but was "informed * * * I could

not complete my application process because [OSU] would not turn over my transcripts or billing history." (Tr. 34.) At trial, appellant introduced a letter from BGSU, dated April 29, 2000, requesting certain documentation. Appellant testified that, in 2003, OSU "began dividing up certain direct loans, Perkins loans, into respected categories so they better checked," and OSU agreed to release his transcripts if he began paying on the Perkins loan. (Tr. 35.) According to appellant, however, OSU did not provide the documents to BGSU at that time, and OSU "failed on its verbal agreement to release the hold on my account and provide the transcripts to the school." (Tr. 36.)

{¶ 24} Upon review, the record supports the magistrate's determination that appellant's cause of action accrued at the latest on February 29, 2000, at which time OSU notified him that his delinquent account had been transferred to OSU's collections department, and he began to dispute the amounts owed. The trial court, in overruling appellant's objections to this finding, noted in part that appellant, in correspondence dated 2005, represented that he had attempted to resolve his dispute with OSU "for the past five years." Further, as cited above, appellant's own testimony indicates he was aware of alleged inconsistencies with billing records, and "disputed the debt at that time in 2000." Thus, having failed to bring his action until October 23, 2006, we agree with the trial court's determination that, pursuant to R.C. 2743.16, appellant's claims are barred.

{¶ 25} Appellant argues, however, that the trial court erred in failing to apply the discovery rule to toll the statute of limitations. We disagree. Under Ohio law, the general rule is that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka,* 81 Ohio St.3d 506, 507 (1998). The discovery rule, however, is an exception to the general rule and provides that "a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Id.* The Supreme Court of Ohio, however, has not extended the discovery rule to general negligence claims. *Investors REIT One v. Jacobs,* 46 Ohio St.3d 176, 180 (1989). Nor do claims for breach of contract and unjust enrichment enjoy the protections of the discovery rule under Ohio law. *Med. Mut. of Ohio v. Amalia Ents., Inc.,* 548 F.3d 383, 393 (6th Cir.2008), fn. 6, citing *Dancar Properties, Ltd. v. O'Leary-Kientz, Inc.*, 1st Dist. No. C-030936, 2004-Ohio-6998; *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d

167 (1st Dist.1995); *Cristino v. Bur. of Workers' Comp.,* 10th Dist. No. 12AP-60, 2012-Ohio-4420, ¶ 41 ("No Ohio court has applied the discovery rule to a claim for breach of contract.").

{¶ 26} We also find no merit with appellant's contention that the trial court erred in failing to find that OSU's alleged breach was a "continuing violation" such that the statute of limitations does not bar his claim. *See Vitek v. AIG Life Brokerage,* S.D.Ohio No. 06-cv-615 (Sept. 22, 2008) (plaintiff "has not cited any cases, nor is the Court aware of any, indicating that Ohio would entertain extending the continuing violation doctrine to breach of contract cases"). *See also State ex rel. Nickoli v. Erie Metroparks,* 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 31 (noting courts have been reluctant to extend the continuous violation doctrine outside the context of Title VII discrimination cases).[1]

{¶ 27} Accordingly, appellant's second, seventh, eighth, and ninth assignments of error are without merit and are overruled.

{¶ 28} We next address interrelated issues raised under appellant's first, third, sixth, fifteenth, and sixteenth assignments of error. Under these assignments of error, appellant argues the trial court failed to make a finding on his claim that OSU improperly withheld his student records and that the court allowed one of the state's witnesses to make "obvious false statements." Appellant also contends the trial court erred in its determination that OSU did not violate the provisions of R.C. 1347.08; appellant maintains that OSU actively concealed his student records and failed to "create" missing documents.

{¶ 29} At issue under these assignments of error are provisions of R.C. 1347.08, pertaining to personal information systems. R.C. 1347.08(A)(2) states in part as follows:

> Every state or local agency that maintains a personal information system, upon the request and the proper identification of any person who is the subject of personal information in the system, shall:
>
> * * *
>
> Except as provided in divisions (C) and (E)(2) of this section, permit the person, the person's legal guardian, or an attorney

---

[1] The continuing violation theory is recognized in Ohio Adm.Code 4112-3-01(D)(2) with respect to civil rights violations. *Ohio Civ. Rights Comm. v. Triangle Real Estate Servs., Inc.,* 10th Dist. No. 06AP-157, 2007-Ohio-1809, ¶ 21.

who presents a signed written authorization made by the
person, to inspect all personal information in the system of
which the person is the subject.

{¶ 30} At the outset, the record supports the trial court's determination that the
conduct complained of by appellant occurred more than two years prior to the date he filed
his complaint. As noted by the trial court, appellant's own testimony establishes the time
frame in which he sought to matriculate to BGSU. Pursuant to R.C. 1347.10(A)(4), "[a]n
action under this division shall be brought within two years after the cause of action
accrued or within six months after the wrongdoing is discovered, whichever is later."

{¶ 31} Further, although finding that appellant's action was untimely under R.C.
1347.10, the trial court addressed his objections "to the magistrate's findings relating to his
claims brought pursuant to Chapter 1347 of the Revised Code." Specifically, the court held
in pertinent part:

> Plaintiff claims that OSU violated Chapter 1347 of the Revised
> Code both by failing to provide him with all documents
> related to OSU's collection efforts, and by failing to forward
> copies of his academic records to Bowling Green State
> University * * * upon his request.
>
> * * *
>
> The evidence supports the magistrate's conclusions that the
> conduct complained of by plaintiff occurred more than two
> years prior to the date when plaintiff filed his complaint in
> this court. * * * Moreover, there is insufficient evidence to
> support a finding that OSU intentionally denied plaintiff his
> right to inspect, dispute or make copies of any information in
> his OSU records. The statute does not obligate OSU to send
> plaintiff copies of all of his records simply because plaintiff
> makes a written request. Rather, the statute requires OSU to
> make such records available to plaintiff for inspection and
> permits plaintiff both to receive copies of documents and
> dispute information contained in such documents.
>
> Plaintiff next contends that the magistrate erred in failing to
> find that OSU wrongfully refused to forward a copy of his
> official academic transcript to BGSU. More particularly,
> plaintiff claims that OSU's policy of placing a "hold" on the
> transcripts of students with delinquent accounts violates
> Chapter 1347 of the Revised Code. Again, the evidence does
> not show that OSU failed or refused to permit plaintiff to

> inspect academic records contained in OSU's personal information system and then provide him with copies. Rather, the evidence demonstrates that OSU simply refused to forward a copy of his official OSU transcript to BGSU without first receiving payment from plaintiff of his student debt. Indeed, plaintiff testified that he entered into an oral agreement with OSU in 2003, whereby OSU promised to release his academic records to BGSU in return for his promise to begin making payments on his delinquent account. Although plaintiff now complains that OSU failed to release his records, he failed to prove or even allege that he made the payments as agreed.

{¶ 32} Thus, contrary to appellant's argument, the trial court fully considered his claim that OSU withheld his student records and addressed his contention that OSU's failure to turn over his student records constituted a violation of R.C. 1347.08. As noted by the trial court, R.C. 1347.08(A)(2) only requires an agency to "permit the person * * * to inspect all personal information in the system." Pursuant to R.C. 1347.10(A)(4), a person who is harmed by the use of personal information may bring an action against any person "who directly and proximately caused the harm by [i]ntentionally denying to the person the right to inspect and dispute the personal information." Here, the trial court did not err in holding that the statute does not require OSU to send appellant copies of all his records upon request.

{¶ 33} The trial court also found insufficient evidence to support a finding that OSU denied him the opportunity to inspect his records. At trial, OSU presented the testimony of Deborah Terry, an employee in OSU's Bursar Office, regarding OSU's handling of appellant's student records. During her testimony, she identified various exhibits, including appellant's student account information, as well as federal Perkins loan promissory notes. The magistrate noted that the testimony of Terry indicated that appellant "has had access to his student account records and there was nothing 'unusual' or inaccurate in those records."

{¶ 34} Appellant argues, however, that Terry admitted to the withholding of records. A review of the trial transcript indicates that appellant questioned Terry on cross-examination about the existence of certain check riders. Terry noted that those particular checks "weren't the ones in question." (Tr. 112.) She further stated, however, that if appellant needed copies of those documents, OSU "can pull them, if you request those."

(Tr. 113.) Upon review, the record does not support appellant's conclusory contentions that the trial court erred in allowing Terry to "commit[] perjury" and make "false statements." Further, the trial court's determination that OSU did not deny appellant the opportunity to inspect his records is not against the manifest weight of the evidence.

{¶ 35} Appellant also contends the trial court erred in failing to recognize his claim for spoliation of records. Appellant argues, in general terms, that the trial court erred "when it allowed [OSU] to remove and destroy" his student records.

{¶ 36} Under Ohio law, a claim for spoliation requires proof of the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 29 (1993). In order to establish a spoliation claim, a plaintiff is required to show that a defendant "willfully destroyed, altered or concealed evidence." *Drawl v. Cornicelli,* 124 Ohio App.3d 562, 567 (11th Dist.1997). Further, "[t]he concept of 'willfulness' contemplates not only an intentional commission of the act, but also a *wrongful* commission of the act." (Emphasis sic.) *Id.* Ohio does not recognize a cause of action for negligent spoliation of evidence. *White v. Ford Motor Co.*, 142 Ohio App.3d 384, 388 (10th Dist.2001).

{¶ 37} We note that Count 4 of appellant's complaint, styled "Spoliation," alleged that appellant had contacted the OAG regarding information on the "Attorney General[']s Debt Collection Website" regarding "collectors" assigned to his account. In the complaint, appellant alleged that he had sent correspondence to "Attorney General Employee Jeff Taylor" regarding "the double collection" of a Perkins promissory note, but that the OAG employee did not respond. According to the complaint, subsequent to appellant's correspondence, "the Attorney General[']s Debt Collection Website containing [appellant's] Accounts no longer contained information verifying double collection."

{¶ 38} The allegation in appellant's complaint that the OAG, a non-defendant, removed materials from its own website, does not state a cause of action for spoliation against OSU. To the extent appellant argues OSU failed to "create" a record, such a claim

cannot form the basis of a spoliation claim.  *Bowles v. Mansfield,* N.D.Ohio No. 1:07CV2276 (July 10, 2009).

{¶ 39} Upon review, the trial court did not err in its determination that appellant failed to prove OSU violated the provisions of R.C. Chapter 1347, nor did the court err in failing to recognize a claim for spoliation.  Accordingly, appellant's first, third, sixth, fifteenth, and sixteenth assignments of error are without merit and are overruled.

{¶ 40} Under his fourth, fifth, and twelfth assignments of error, appellant argues the trial court erred in failing to find a violation of the Federal Fair Debt Collection Practices Act ("FDCPA").  Specifically, under the fourth and fifth assignments of error, appellant contends that, between 2000 and 2005, OSU harassed him in violation of the Fair Debt Collection Practices Act while under his twelfth assignment of error he argues that "federal regulations may be given the force and effect of law."

{¶ 41} We note that appellant's complaint did not cite the FDCPA, nor did he seek to amend his complaint to allege a violation of the FDCPA.  We further note that the provisions of the FDCPA generally "apply only to debt collectors," and the FDCPA "expressly exempts from the definition of 'debt collectors' 'any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties.' " *Bey v. Nettles,* D.S.C. No. 3:11-01633-CMC-JRM (Aug. 5, 2011), quoting 15 U.S.C. 1692a(6)(C).  *See also Streater v. Cox,* E.D.Mich. No. 07-11163 (Feb. 28, 2008) (holding that 15 U.S.C. 1692a(6)(C) precluded FDCPA action against state employees).  Upon review, we find no error by the trial court in failing to find a violation of the FDCPA and, therefore, the fourth, fifth, and twelfth assignments of error are overruled.

{¶ 42} Under his tenth and thirteenth assignments of error, appellant argues that the trial court erred in applying the doctrine of res judicata as a bar to his claims. However, because of our determination that the trial court did not err in finding appellant's claims are barred under the applicable statute of limitations, we need not consider the court's alternative holding that the claims are also barred by res judicata. Accordingly, the tenth and thirteenth assignments of error are rendered moot.

{¶ 43} Under his fourteenth assignment of error, appellant contends the trial court erred when it failed to sanction OSU for failing to obey a court order.  More specifically,

appellant argues that, during the trial of this matter counsel for OSU gave a "false oath" that discovery had been timely. A review of the record indicates that, at the beginning of the trial proceedings, appellant "move[d] for sanctions," alleging that he had not received all discovery. (Tr. 20.) Counsel for OSU responded that the "documents * * * we provided him are a full and complete billing record of what he has." (Tr. 20.) The magistrate denied the motion for sanctions.

{¶ 44} While appellant contends the trial court erred in failing to sanction OSU, he did not raise this issue in his objections to the magistrate's decision. Accordingly, appellant has waived this argument for purposes of appeal. *N. Coast Premier Soccer, LLC v. Ohio Dept. of Transp.,* 10th Dist. No. 12AP-589, 2013-Ohio-1677, ¶ 38 (having failed to "make these arguments in its objections to the magistrate's decision [appellant] waived them on appeal"). Appellant's fourteenth assignment of error is without merit and is overruled.

{¶ 45} Under his eleventh and seventeenth assignments of error, appellant argues in general that the trial court erred in failing to grant his request for injunctive relief and in overruling his objections to the magistrate's decision. However, in light of our disposition of appellant's other assignments of error, including our determinations that the trial court did not err in holding that his claims were barred under the applicable statute of limitations, and that the court did not err in failing to find a violation of R.C. Chapter 1347, we further find that the trial court did not err in failing to grant his request for injunctive relief, nor did the court err in overruling the objections. The eleventh and seventeenth assignments of error are therefore overruled.

{¶ 46} Based upon the foregoing, appellant's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error are overruled, the tenth and thirteenth assignments of error are rendered moot, and the judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____